Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL XII**

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>EVA RODRÍGUEZ DE JESÚS Y OTROS<br><br>Apelante | KLAN202400910 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV06908 (701)<br><br>Sobre: EJECUCIÓN DE HIPOTECA: PROPIEDAD RESIDENCIAL |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2024.

La apelante, Sra. Yolanda Rodríguez, como apoderada y representante de la Sra. Eva Rodríguez De Jesús, solicita que revoquemos la Sentencia en la que el Tribunal de Primera Instancia desestimó la reconvención sobre pagaré extraviado en un pleito de ejecución de hipoteca.

El apelado, Banco Popular de Puerto Rico, presentó su oposición al recurso.

Con la comparecencia de ambas partes, procedemos a resolver.

**I.**

El 8 de diciembre de 2023, el Banco Popular de Puerto Rico, en adelante BPPR o apelado, presentó la demanda del epígrafe.[1] En específico, dicha demanda adujo que, la señora Eva Rodríguez De Jesús, en adelante Sra. Rodríguez De Jesús o apelante, obtuvo un

---
[1] Apéndice 1 del *Recurso de Revisión* págs. 2-6.

préstamo hipotecario revertido (*reverse mortgage*), mediante pagaré a favor de Popular Mortgage, Inc. o a su orden, por la suma principal de $258,000.00. La deuda del pagaré se aceleró y la misma se declaró líquida, vencida y exigible de conformidad con la escritura de hipoteca, ya que la propiedad no es la residencia principal de la Sra. Rodríguez De Jesús o de otro deudor.[2]

El 5 de junio de 2024, la apelante presentó su *Contestación a la Demanda* y *Reconvención y Demanda de Coparte* en contra de BPPR.[3] Además, radicó una demanda contra tercero en contra del bufete Martínez & Torres Law Offices, P.S.C.[4] En la reconvención, la apelante alega que la sentencia emitida en el caso BY2022CV02400 sobre pagaré extraviado es nula, ya que no fue incluida en dicho pleito, pese a que es parte indispensable y, que no se cumplió con la *Ley de Transacciones Comerciales.* En específico, la Sección 2-309 de dicha ley dispone que la sentencia de un pagaré extraviado debe estar fundamentada en una determinación del tribunal en que el deudor esté protegido contra una pérdida por una reclamación invocada por otra persona para exigir el cumplimiento del instrumento. 19 LPRA sec. 60.

Por su parte, el 2 de julio de 2024, BPPR presentó una *Moción de Desestimación a la Reconvención,* en la que alegó que la reconvención no expone una reclamación que justifique la concesión de un remedio.[5] Además, solicitó la imposición de honorarios de abogado como sanción por entender que la apelante había sido temeraria. En oposición, el 22 de julio de 2024, la apelante presentó *Moción de Desestimación de Reconvención* alegando que dicha moción es frívola.[6] Añadió que, la Reconvención es compulsoria, ya

---

[2] Entrada núm. 18 de SUMAC.
[3] Apéndice 6 del *Recurso de Revisión,* págs. 41-64.
[4] *Íd.*
[5] Apéndice 11 del *Recurso de Revisión,* págs. 83-95.
[6] Apéndice 13 del *Recurso de Revisión,* págs. 99-112.

que la nulidad de sentencia pudiese derrotar la demanda sobre ejecución de hipoteca.

Así las cosas, el 2 de agosto de 2024, el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), dictó *Sentencia Parcial* acogiendo los planteamientos esbozados en la *Moción de Desestimación de Reconvención* y desestimó la reconvención.[7] En específico, dicho foro expuso que, la reconvención no presentó una reclamación en contra de BPPR, sino que la nulidad de un proceso de naturaleza completamente distinta a la del caso del epígrafe. Argumentó el TPI que el planteamiento de falta de parte indispensable es un asunto jurisdiccional, por lo cual la parte demandada tenía que presentar su alegación de nulidad de sentencia en el caso BY2022CV02400, mediante un pleito independiente, y no a través de una reconvención. Finalmente, impuso a la apelante una suma de mil quinientos dólares ($1,500.00) de honorarios de abogados a favor del apelado. Arguyó el TPI que la reconvención presentada por el apelante es frívola y contraria a derecho.

Por consiguiente, el 19 de agosto de 2024, la apelante presentó *Solicitud de Reconsideración.*[8] En respuesta, el BPPR presentó su *Oposición a Solicitud de Reconsideración.*[9] El 9 de septiembre de 2024, el TPI declaró no ha lugar a la moción de reconsideración.[10]

Inconforme, la apelante acudió ante este Tribunal mediante recurso de apelación, en el que alegan que:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA RECONVENCIÓN POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL NO RECONOCER LA RECONVENCIÓN

---

[7] Apéndice 14 del *Recurso de Revisión,* págs. 114-127.
[8] Apéndice 16 del *Recurso de Revisión,* págs. 131-148.
[9] Apéndice 18 del *Recurso de Revisión,* págs. 152-159.
[10] Apéndice 19 del *Recurso de Revisión,* págs. 158-159.

COMO EL PLEITO INDEPENDIENTE QUE PAUTA LA REGLA 49.2 DE PROCEDIMIENTO CIVIL.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL INDICAR QUE LA RECONVENCIÓN NO ERA PERMISIBLE CUANDO SE ALEGA LA NULIDAD DE UN PAGARÉ HIPOTECARIO EN UN CASO DE EJECUCIÓN DE HIPOTECA.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL IMPONER HONORARIOS DE ABOGADO POR TEMERIDAD Y/O FRIVOLIDAD.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL DENEGAR LA RECONSIDERACIÓN ACOGIENDO LOS FUNDAMENTOS DEL DEMANDANTE EN SU OPOSICIÓN A RECONSIDERACIÓN.

## II.

### A.

### HIPOTECA INVERSA

En una hipoteca inversa o *reverse mortgage*, el propietario del inmueble no vende su propiedad sino toma prestado contra el capital de esta, usando la propiedad como el colateral o garantía. Distinto a una hipoteca tradicional, el prestatario recibe pagos periódicos, o un pago total, y no necesita pagar el balance del préstamo pendiente hasta que ocurra cierto evento, según pactado.

Este instrumento hipotecario se diferencia de otros, por ir dirigido a la población de edad avanzada; en específico, la población de sesenta y dos (62) años o más. Opera como un préstamo no reembolsable y está asegurado a través de un programa del Departamento de la Vivienda y Desarrollo Urbano del gobierno federal (HUD). Véase: 12 USCA sec. 1715z–20, *et seq.* y 24 CFR sec. 206.1 *et seq.*

Se conceptualizó para atender las necesidades especiales de los propietarios de edad avanzada, reduciendo el efecto de la adversidad económica en esta población, por los incrementos en los costos de salud, vivienda y necesidades de subsistencia en una etapa de sus vidas en que la expectativa de ingresos es menor a

través de hipotecas que permiten la conversión de una parte del capital acumulado por la propiedad en activos líquidos. Además de motivar un aumento de acreedores hipotecarios y participantes en los mercados hipotecarios mediante la producción y mantenimiento de hipotecas sobre el hogar de conversión de capital para personas de edad avanzada. 12 USCA sec.1715z-20 (a)(b).

Así pues, la cantidad de dinero que recibe el prestatario dependerá de su edad, del valor de la propiedad y de las tasas de interés prevalecientes en el mercado. Y. Rodríguez, *La hipoteca revertida, un estudio conceptual: la gran dicotomía, entre el sueño y la pesadilla de sus posibilidades en el mercado financiero*, 84 Rev. Jur. UPR 1115, 1116 (2015).

Mediante la hipoteca invertida, el propietario no tiene que hacer pagos mensuales, ya sea por concepto de intereses o por aportaciones al balance del principal, la hipoteca vence cuando el prestatario fallece o, en el caso de una pareja casada, cuando el último prestatario sobreviviente fallece, cuando la propiedad hipotecada deja de ser la residencia principal del prestatario, cuando el prestatario deje de cumplir con sus responsabilidades de impuestos sobre la propiedad, entre otros factores. Cuando ocurre una de las situaciones mencionadas, el préstamo se considera terminado o vencido, y es entonces, que se requiere el pago total del mismo. Y. Rodríguez, *op. cit.*, pág. 1116.

En resumen, las hipotecas revertidas forman parte de un sistema de préstamos complejo y muy regulado por el gobierno federal, que busca proveer una opción viable para la comunidad de edad avanzada. Debido a su metodología particular, el cumplimiento de sus requisitos es indispensable para poder iniciar el proceso de ejecución de este tipo de hipoteca. Por consiguiente, es menester destacar que evidenciar el cumplimiento estricto de dichos

requisitos resulta crucial para garantizar el propósito social de la legislación federal que regula su creación.

Además, en Puerto Rico, el 29 de julio de 2011 se aprobó la Ley Núm. 164–2011 conocida como la Ley de Protección al Consumidor de Hipotecas Inversas. La antedicha ley se aprobó a los fines de establecer protecciones y garantías adicionales a las establecidas por la Ley Federal para los consumidores de préstamos de hipotecas inversas; consignar los deberes que tendrían las instituciones financieras que ofrecieran estos préstamos para con los consumidores; autorizar a la Oficina del Comisionado de Instituciones Financieras para que supervisara e hiciera valer las disposiciones de la ley; así como establecer sanciones, multas y penalidades; entre otros fines.

La legislación reconoce el gran aporte de este tipo de producto para la población de edad avanzada, pero también atiende ciertos problemas que han aflorado en su aplicación. Específicamente relacionado a lo que hoy atendemos, la legislación reconoce que en ocasiones el mercadeo del producto podrá dar a entender que la persona nunca está en riesgo de perder su casa. Y tal aseveración puede resultar engañosa, ya que el prestamista hipotecario pudiera ejecutar una hipoteca inversa si el deudor falla en pagar sus contribuciones sobre la propiedad, el seguro sobre la propiedad o incumple con las cláusulas del contrato de hipoteca. A esos efectos, la entidad bancaria pudiese acelerar la deuda y declararla vencida. En lo aquí pertinente, la legislación federal establece los siguiente:

**206.27 Mortgage provisions.**

.          .          .          .          .          .

(c) Date the mortgage comes due and payable.

.          .          .          .          .          .

(2) The mortgage shall state that the outstanding loan balance shall be due and payable in full, upon approval of the Commissioner, if any of the following occurs:

(i) The property ceases to be the principal residence of a borrower for reasons other than death and the property is not the principal residence of at least one other borrower;

**(ii) For a period of longer that 12 consecutive months, a borrower fails to occupy the property because of physical or mental illness and the property is not the principal residence of at least one other borrower.**

(iii) The borrower does not provide for the payment of property charges in accordance with §206.205; or

(iv) An obligation of the borrower under the mortgage is not performed.

.        .        .        .        .        .

24 CFR sec. 206.27 (c)(2). (Énfasis nuestro).

De otra parte, la escritura de hipoteca revertida de este caso contiene un lenguaje similar a la legislación federal. En particular, la sección quinta, inciso nueve, expone lo siguiente:

(a) ***Vencida y Pagadera.*** El Acreedor Hipotecario podrá requerir el pago total inmediato de todas las sumas garantizadas por esta Hipoteca si:
....
(iii) La Propiedad deja de ser la residencia principal de un Deudor por razones que no sean la muerte y la Propiedad no es la residencia principal de al menos otro Deudor; o

(iv) Por un periodo de más de doce (12) meses consecutivos, un Deudor no ocupa físicamente la Propiedad debido a una enfermedad física o mental y la Propiedad no es la residencia principal de al menos otro Deudor; o[11]
....

**B.**

**RECONVENCIÓN**

Una parte dentro de un litigio podrá presentar una reclamación contra una parte adversa a través de la reconvención. Existen dos tipos de reconvenciones: las permisibles y las compulsorias. *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423-424 (2012); *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322, 332 (2010). La razón de ser de este mecanismo procesal

---

[11] Entrada Núm. 18 de SUMAC.

es evitar la multiplicidad de pleitos al disponer de un mecanismo para resolver todas las controversias comunes en un solo procedimiento. *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860, 867 (1995).

La Regla 11.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que la reconvención denominada como compulsoria contendrá cualquier reclamación contra la parte adversa, siempre que surja del acto, omisión, o del evento que motivó la demanda. La regla se dirige a fomentar la economía procesal. Como norma general, si la parte demandada no presenta una reconvención compulsoria, no podrá posteriormente presentar una acción independiente basada en el mismo evento que motivó la acción original. *Consejo Titulares v. Gómez Estremera et al.*, *supra,* pág. 425; *S.L.G. Font Bardón v. Mini-Warehouse*, supra, pág. 333; *Neca Mortg. Corp. v. A & W Dev. S.E.*, supra, pág. 867. El requerimiento tiene que ceñirse a reclamaciones entre las partes, pues no permite que se añadan terceros. Si no se formula una reconvención compulsoria a tiempo se entenderá que se renuncia a la causa de acción que la motiva. Es decir, será concluyente entre las partes sobre aquellos asuntos que pudieron haber sido planteados. Javier A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, págs. 114-115.

Por su parte, la Regla 11.2 permite que se presenten reconvenciones permisibles. En específico, dicha regla dispone que "[u]na alegación podrá exponer como reconvención contra una parte adversa cualquier reclamación que no surja del acto, de la omisión o del evento que motivó la reclamación de dicha parte." Ahora bien, distinto a la reclamación compulsoria, el que no se presente este tipo de reconvención, no tiene el efecto de que la sentencia pueda alegarse como cosa juzgada. *Consejo Titulares v. Gómez Estremera et al.*, *supra,* pág. 447.

## C.

### RELEVO DE SENTENCIA

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, establece el mecanismo procesal y los fundamentos para solicitar el relevo de los efectos de una sentencia. Dicha regla provee un mecanismo post sentencia para impedir que los tecnicismos y sofisticaciones frustren los fines de la justicia. *García Colón et al v. Sucn. González,* 178 DPR 527, 539 (2010). El remedio provisto permite al tribunal hacer un balance entre dos intereses en conflicto. Por un lado, está el interés de que toda litigación concluya y tenga finalidad. Por otra parte, está el interés de que en todo caso se haga justicia. *Íd.*, pág. 540. Los tribunales tienen discreción para conceder o no el relevo de una sentencia, independientemente de que existan algunos de los fundamentos de la Regla 49.2, *supra*, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Náter v. Ramos,* 162 DPR 616, 624 (2004); *Rivera v. Algarín*, 159 DPR 482, 490 (2003). El texto de la Regla 49.2, *supra*, dispone lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de la una parte adversa;
>
> (d) nulidad de sentencia;
>
> [...]
>
> Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de

haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta regla no afectará la finalidad de una sentencia, ni suspenderá sus efectos. **Esta Regla no limita el poder del tribunal para:**

**(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento;**

**(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y**

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

.        .        .        .        .        .        .        .        .

(Énfasis nuestro)

El peticionario de una moción de relevo de sentencia está obligado a justificar su solicitud, amparándose en una de las causales establecidas en la Regla 49.2, *supra.* Esta regla debe interpretarse liberalmente. No obstante, no es una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. *García Colón et al v. Sucn. González, supra,* pág. 541. Tampoco está disponible para alegar cuestiones sustantivas que debieron plantearse mediante reconsideración o apelación. *Íd.*

Al examinar una solicitud de relevo de sentencia bajo la Regla 49.2, *supra,* el juez deberá estar atento al tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la promovente de no ser concedido el remedio solicitado. *Pardo v. Sucn. Stella,* 145 DPR 816, 825 (1998).

La Regla 49.2, *supra,* faculta a los tribunales a relevar a una parte de los efectos de una sentencia, cuando se determina su nulidad. Una sentencia es nula cuando se dictó sin jurisdicción o cuando se quebró el debido proceso de ley. Cuando la sentencia es nula, no hay margen para la discreción y tiene que ser dejada sin efecto, independientemente de los méritos de la defensa o reclamación del perjudicado. Una sentencia nula tampoco está

sujeta al término de seis (6) meses establecidos en la Regla 49.2, *supra*. *García Colón et al v. Sucn. González, supra,* págs. 543-544.

Ahora bien, existen dos mecanismos procesales para atacar la validez de un dictamen: (1) la moción de relevo de sentencia bajo la Regla 49.2(4) de Procedimiento Civil, 32 LPRA Ap. III, o (2) el pleito independiente de nulidad de sentencia. *Rivera v. Jaume*, 157 DPR 562, 573 (2002). Empero, la mencionada regla no constituye una llave maestra para reabrir controversias ni sustituye los recursos de apelación o reconsideración. *García Colon v. Sucn. González, supra,* 541; *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989).

No obstante, el plazo de seis (6) meses es inoperante en aquellas ocasiones que la sentencia sea nula cuando se ha dictado sin jurisdicción o cuando se violó el debido proceso de ley. *García Colon v. Sucn. Gonzalez, supra,* 543; Javier Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 1ª ed. rev., Colombia, 2012, pág. 297. Ello es así, pues es una sentencia nula en derecho y, por lo tanto, inexistente. *Íd.* Por ello, esa nulidad es subsanable con el transcurso del tiempo, ya que no comienzan a decursar los términos. *Íd.* "Ello significa que, independientemente el tiempo que transcurra, una sentencia nula podrá advenir a ser ejecutable". *Íd.*

En lo pertinente, aún transcurrido el término de seis (6) meses, la propia regla reconoce el poder de un tribunal para ver un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento. *Rivera v. Jaume, supra,* págs. 573-574. La acción independiente está predicada en la justicia fundamental de la reclamación. *Íd.* Por lo tanto, los remedios que provee la Regla 49.2, *supra,* reduce considerablemente el ejercicio de una acción independiente en los casos en que ha transcurrido el término fatal de seis (6) meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia. *Rivera v. Jaume, supra,*

574, citando a *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

## D.

## HONORARIOS DE ABOGADOS

El Tribunal Supremo de Puerto Rico (TSPR) ha definido temeridad como "aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos." *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148 (2022). Se actúa con temeridad cuando por "terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos" se obliga a que la otra parte tenga que asumir gastos innecesarios. La temeridad es "contraria a los principios de eficiencia en la administración de la justicia y al buen funcionamiento de los tribunales." *Íd.*

La sanción que procede en todo tipo de acción judicial cuando una parte ha sido temeraria es la imposición de honorarios de abogados. *Íd.* Específicamente, la Regla 44.1 (d) de Procedimiento Civil de 2009 dispone lo siguiente:

> (d) *Honorarios de abogado.* En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

Para poder reclamar honorarios de abogado, es imprescindible que se haya actuado temerariamente durante la tramitación del pleito. *SLG González-Figueroa v. SLG et al., supra,* pág. 148. "Una vez se determina la temeridad, la imposición de honorarios de abogado [...] por temeridad es imperativa." *Íd.,* pág. 147. Sin embargo, dicha sanción descansa en la sana discreción del tribunal en atención a su propósito de disuadir la litigación frívola y

compensar, en lo posible, los gastos incurridos por la parte que no ha sido temeraria. *Íd.* En esa línea, la facultad de imponer honorarios de abogado "es la mejor arma que tienen los tribunales para gestionar eficientemente los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios." *Íd.*, pág. 150. Así las cosas, "[e]l poder inherente para imponer sanciones permite una flexibilidad para escoger la sanción y ajustarla a los hechos y al propósito que se persigue." R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., 2017, pág. 247.

Cabe recalcar que, la imposición de los honorarios de abogado está reconocida como una práctica que recae, específicamente, en la discreción del tribunal sentenciador. Los tribunales apelativos solo intervendrán cuando dicho foro haya abusado de tal facultad. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010).

El TSPR ha reconocido que actúa temerariamente la parte que: (1) "insiste contumazmente en alegar algo sin alguna prueba fehaciente que lo apoye, (2) niega los hechos que le constan o son de fácil corroboración, (3) "contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente," (4) "se arriesga a litigar un caso del que prima facie se desprende su negligencia," y (5) "niega un hecho que le consta ser cierto." *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 149.

Por otra parte, el TSPR ha resuelto que no es temerario quien plantea asuntos complejos y novedosos, sobre los cuales no existan precedentes vinculantes, o cuando exista alguna desavenencia honesta en cuanto al derecho aplicable a los hechos del caso. *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 149. Pues, es norma imperante que "no puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no

haber prevalecido en su acción". *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 355 (1989).

**III.**

La apelante alega que erró el TPI al dictar una sentencia parcial a favor del apelado. Según la Sra. Rodríguez De Jesús, el TPI tenía que reconocer la Reconvención como el pleito independiente que pauta la Regla 49.2 de Procedimiento Civil, *supra*. Añadió que era obligación del TPI acoger la Reconvención para declarar nula la sentencia del caso BY2022CV02400 sobre pagaré extraviado por falta de parte indispensable. Además, cuestiona la imposición de honorarios de abogado, por entender que la reconvención no fue frívola y contraria a derecho.

Según vimos, para que proceda el Relevo de Sentencia, debe ser presentado en el mismo pleito dentro el término fatal de seis (6) meses, así lo establece expresamente la Regla 49.2, *supra*. No obstante, cuando una parte plantea la nulidad de sentencia no está atada a ese término, porque puede presentar un pleito independiente, sin limitación al mismo. Sin embargo, con respecto a la controversia en cuestión, la apelante intentó rebatir la nulidad de la sentencia dictada en el caso BY2022CV02400 mediante Reconvención instada en este pleito. Tal como se explicó, la reconvención no es el remedio adecuado para declarar nula una sentencia, sino que es a través de un pleito independiente. No obstante, es claro que la nulidad de la sentencia de pagaré extraviado pudiese tener un efecto sobre la demanda de epígrafe. Pese a eso, la apelante no queda huérfana de remedios al poder solicitar la paralización de los procesos en el caso de nulidad de sentencia. Esto así, concluimos que no lleva razón la apelante, ya que el pleito de nulidad de sentencia debe ser uno independiente al del caso ante nos.

En cuanto a la imposición de honorarios de abogado, es sabido que, para que proceda es imprescindible que se haya actuado temerariamente durante la tramitación del pleito. De modo que, el TPI debe evaluar los factores, como la naturaleza del litigio, las cuestiones de derecho presentadas, la cuantía en controversia, entre otras cosas. Mientras que los tribunales apelativos solo intervendrán cuando dicho foro haya abusado de su discreción. *Marrero Rosado v. Marrero Rosado, supra,* pág. 505.

Luego de examinar el recurso y el expediente ante nuestra consideración, no hay duda de que el foro primario excedió el ámbito de su discreción en la imposición de honorarios de abogado. Cabe precisar que, los argumentos presentados por la apelante, aunque incorrectos, no están desprovistos de fundamentos. La apelante razonó que presentar una reconvención de nulidad de sentencia sobre pagaré extraviado, pudiese derrotar una reclamación sobre ejecución de hipoteca al que dicho documento legal le dio vida. Añadió que el no presentar el recurso de reconvención, obligaría a las partes a una carrera por la primera sentencia, siendo impráctico y permitiendo una futura alegación de impedimento colateral por sentencia.[12]

De lo anterior, es evidente que ese planteamiento no es frívolo y tampoco ajeno a nuestra realidad procesal. De igual forma, dicha reclamación y los procedimientos llevados a cabo en el TPI no ostentan terquedad y contumacia que justifique la penalidad que supone la imposición de honorarios de abogado por temeridad. Es decir, la apelante no asumió una actitud desprovista de fundamentos que afecte el buen funcionamiento y la administración de la justicia. Por ende, el foro recurrido abusó de su discreción al conceder la partida de honorarios de abogado.

---

[12] *Recurso de Apelación* pág. 17.

**IV.**

Por los fundamentos antes expuestos, se confirma la sentencia parcial que desestimó la Reconvención presentada por la apelante y se revoca solamente aquella parte que impone el pago de honorarios de abogados.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Pérez disiente única y exclusivamente en cuanto a la modificación de la Sentencia eliminando los honorarios de abogados concedidos.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones